

NORTH CAROLINA     FILED     IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
IREDELL COUNTY     2017 JUL 25 A 11:43     17 CvS _____

Statesville Roofing & )
Building Restoration, Inc., ) IREDELL CO., C.S.C.
                                     )
          Plaintiff      )
                                     )
vs.                             )      C O M P L A I N T
                                     )      (Jury Trial Demanded)
FCCI Insurance Company,    )
                                     )
          Defendant     )

Plaintiff, complaining of Defendant and for its claims for relief, says:

## JURISDICTIONAL FACTS

1. Plaintiff is a North Carolina corporation with a principal office in Iredell County, North Carolina. It is a licensed general contractor engaged, inter alia, in the installation of new roofs and the repair or replacement of existing roofs, together with the making of external repairs to existing buildings and structures.

2. Plaintiff is licensed under the law of both North Carolina and South Carolina to engage in the kinds of work described in paragraph 1.

3. Defendant is an insurance company organized and existing under the laws of the State of Florida. It is

1

authorized to transact and in fact transacts business in North Carolina.

4. This is an action by Plaintiff for damages caused by Plaintiff on a project at the Caravelle Resort in Myrtle Beach, South Carolina, for which Defendant is liable to Plaintiff under a Commercial General Liability Insurance Policy (including Endorsements) issued by Defendant to Plaintiff on or about May 1, 2015.

5. The amount in controversy exceeds $25,000, excluding interest and costs.

6. This Court has jurisdiction of the parties and the subject matter.

OPERATIONAL FACTS

1. Effective May 1, 2015, Plaintiff purchased from Defendant a Commercial General Liability Insurance Policy (the base "CGL policy"), bearing Number CPP00184722, which provides insurance coverage to compensate Plaintiff for bodily injury, property damage and other risks caused by Plaintiff or its agents as defined in the policy.

2. To the extent an event occurred which invoked a liability of Defendant to Plaintiff under the policy, the policy provided $1,000,000 in coverage for each occurrence to which the policy applied.

3. The policy covered the period May 1, 2015, to May 1, 2016. It was a renewal of a similar policy which had provided coverage to Plaintiff for many years.

4. On September 18, 2015, while the policy was in force, Plaintiff entered into a contract with the Caravelle Resort Owners Association, Inc. (the "HOA"), under which Plaintiff was engaged to make certain renovations and repairs to a condominium facility in Myrtle Beach, South Carolina, known as "The Caravelle Resort" (hereafter "the resort"). The HOA was the governing body of the owners of the condominiums which comprised the resort.

5. The primary work under the contract (hereafter "the project") was the replacement of sliding glass doors and other openings facing the Atlantic Ocean which the resort overlooked, and replacement as specified of the concrete decks which had deteriorated in the inclement weather and salt-air environment of the Atlantic oceanfront over a period of several decades. Also to be replaced (to strict building code requirements) were the handrails which formed a part of every deck in the project.

6. The project involved the doors and other openings which accommodated Packaged Terminal Air Conditioners (PTACS), together with the decks and the handrails of seventy-eight (78) condominiums on six levels of the resort (floors one through

3

six) forming the front of the resort and directly facing the Atlantic Ocean.

7. Plaintiff's work included no renovations or improvements to any of the interior portions of the condominiums except as required to re-frame new doors which were specially manufactured for each unit, and to perform such additional work as was required to secure the PTACS that penetrated the front walls of the condominiums.

8. In performing its work, Plaintiff removed each of the 78 sliding glass doors on floors one through six of the condominium. New doors were ordered from a door manufacturer, each with specific heights and widths to conform to the dimensions of the openings created by the removal of the old doors. These areas remained open until the replacement doors were received from the manufacturer, delivery occurring in many cases months beyond expected delivery.

9. While Plaintiff awaited replacement doors, it was necessary to cover the many openings with waterproofing material to protect against the elements. Plaintiff performed that function with EPDM membrane and/or plastic sheathing or other material affixed to temporary wood framing to repel wind and rain until the new doors could be placed.

4

10. It occurred particularly in the Spring of 2016 that Myrtle Beach experienced frequent wind and rains. Much of the water entry occurred because of the ineffectiveness of the water proofing membrane covering the fifth floor deck and vertical surfaces at the fifth and sixth floors. Additionally, water penetrated openings or overlaps in the waterproofing membrane which Plaintiff had placed over other openings, causing water to enter some of the condominiums and damage the sheetrock walls, the carpet and some of the furnishings in many of the individual units whose main sliding glass doors, decks, hand rails and PTAC openings Plaintiff was repairing.

11. The water damage described above was not to the work Plaintiff had undertaken pursuant to its contract with the HOA, but rather to elements of the condominiums, the carpet and the furnishings therein regarding which Plaintiff had no obligations under its contract with the HOA.

12. Plaintiff was negligent in its failure to adequately protect against the entry of the water into the condominium units which penetrated the waterproofing membrane Plaintiff had installed. By reason of that negligence Plaintiff became obligated to replace and repair the damaged sheetrock, carpet and internal furnishings of the units, none of which work was contemplated in Plaintiff's contract with the HOA.

13. The damage referred to in paragraph 12 constitutes an "occurrence" as defined in Plaintiff's contract with Defendant. There, in Section V, par. 13, "occurrence" is defined as follows:

> "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

14. Here, there existed an "occurrence" as to the sheetrock, the carpet and the furnishings within various of the individual condominium units because they were continuously or repeatedly exposed to substantially the same harmful condition, i.e., the water penetration through the materials negligently installed and/or maintained by the Plaintiff.

15. Defendant is liable for damages resulting from said occurrence because the resulting damage was "property damage" under Section V, par. 17, of Plaintiff's insurance policy with Defendants defined as "physical damage to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it".

16. Defendant's liability to Plaintiff for such damages arises out of Sec. 1, par. 1.b. of the policy, which provides that

6

> "This insurance applies to 'bodily injury' or <u>'property damage'</u> (emphasis ours) only if (1) the 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the coverage territory."

17. As noted above, the property damage arose out of an "occurrence" as defined in the policy. It occurred within the "coverage territory" defined in the policy.

18. Plaintiff prior to April 14, 2016, recognized that water damage existed on the interior of the condominium units where Plaintiff was performing its new door installation and exterior deck work. Although the extent of the damage was not then known, a written report on Defendant's Notice of Occurrence/Claim Form was provided to Defendant on April 14, 2016, describing that

> "Water damage [is occurring] at ongoing project where insured is making balcony repairs."

19. None of the persons involved with this occurrence on or about April 14, 2016, could then determine the extent of the damage. However, all of the damage occurred during the time the policy was in force.

20. Demand was later made by the HOA, unit owners, and the advisors of the HOA that Plaintiff repair, or cause to be repaired, the water damage to the sheetrock, the carpet, the

7

furnishings and any other components damaged by the "occurrence".

21. Plaintiff on or about April 1, 2016, began to engage third parties and to use its own labor and supervisory personnel to repair or replace the damage that had resulted to the sheetrock, the carpet, and the furnishings resulting from the occurrence. While some of said work was performed after May 1, 2016, it all related to the damages that had occurred between May 1, 2015, and May 1, 2016.

22. Over time, and determined as of June 28, 2017, Plaintiff paid third parties or itself bore expenses in the gross amount of $196,596.27 to effect the repairs resulting from the occurrence.

23. Plaintiff has demanded of Defendant that it pay to Plaintiff under the policy for the damages resulting from the occurrence and for which Plaintiff has paid to third parties and is entitled to recover for its own labor and supervisory personnel the sum of $196,596.27. Defendant has failed and refuses to pay Plaintiff the same.

24. By failing to pay Plaintiff the aforesaid sum of $196,596.27, Defendant is in breach of its contract with Plaintiff. In consequence of said breach, Defendant is indebted to Plaintiff for principal in the amount of $196,596.27, plus

interest at eight (8%) percent per annum on that amount since June 28, 2016.

Wherefore, Plaintiff prays that it have and recover of Defendant the following:

a. Principal in the amount of $196,596.27.

b. Interest on the sum of $196,596.27 at eight (8%) percent per annum from June 28, 2016, until paid in full.

c. The costs of this action.

d. Such other and further relief to which the Plaintiff may be entitled.

This 25 day of July, 2017.

EISELE ASHBURN GREENE & CHAPMAN, PA

By: _____
Douglas G. Eisele
N.C. State Bar No. 4930
Attorneys for Plaintiff
320 W. Broad Street
Statesville, NC 28677
Telephone: (704/878-6400)
FAX No.: (704-924-9727)
e-mail: qblee@eagc-law.com

North Carolina

Iredell County

    M. Douglas Davidson, Jr., being first duly sworn, deposes and says:

    That he is President of Statesville Roofing & Building Restoration, Inc., a corporation, and as such is the proper person to make this verification; that he has read the foregoing Complaint and the same is true of his own knowledge, except those matters and things therein set forth upon information and belief, and as to those, he believes it to be true.

                                                                          _____
                                                                                            Affiant

Sworn to and subscribed before me,

this _25_ day of July, 2017, said

Affiant being personally known to me.

_____
                    Notary Public

My commission expires July 27, 2017.

   (Notary Seal)

LEE B JOHNSON
NOTARY PUBLIC
IREDELL COUNTY, NC
My Commission Expires 7-27-2017

10